# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-----------------------------------------------------------------X
MARIA GARGANO,

                              Plaintiff,

-against-

MASSAPEQUA UNION FREE SCHOOL
DISTRICT; DR. RANDALL
SOLOMON sued both in his official and
individual capacities,

                              Defendants.
-----------------------------------------------------------------X

**Index No.:**
**Date Purchased:**
Plaintiff designates Nassau County as the place of trial

**SUMMONS**

The basis of the venue is:
Defendants Principal Place of business

Plaintiff resides at:
920 Ridge Road,
Queensbury, NY 12804

To the above-named Defendant(s):

    YOU ARE HEREBY SUMMONED to answer the complaint in this action and to service a copy of you answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of the summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in this complaint.

Dated: September 2, 2020
        New York, New York

Yours, etc.

MASON LAW, PLLC.

/s/ D. Christopher Mason
D. CHRISTOPHER MASON
Attorneys for Plainitff
MARIA GARGANO
11 Broadway – Suite 615-8
New York, NY 10004
T: 212.498.9691
F: 212.498.9692

**Defendants' addresses:**
MASSAPEQUA UNION FREE SCHOOL DISTRICT
4925 Merrick Road
Massapequa, New York 11758

Dr. RANDALL SOLOMON
55 Nesconset Highway, #1
Port Jefferson Station, NY 11776

Hand Delivered
Ann Marie Bellizzi
District Clerk.


RECEIVED
SEP 14 2020
MASSAPEQUA PUBLIC SCHOOLS
OFFICE OF THE SUPERINTENDENT

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-----------------------------------------------------------------X
MARIA GARGANO,

                              Plaintiff,             Index No.:

                                                               **VERIFIED COMPLAINT**

      -against-

                                                               *Jury Trial Demanded*

MASSAPEQUA UNION FREE SCHOOL
DISTRICT; DR. RANDALL
SOLOMON sued both in his official and
individual capacities,

                              Defendants.
-----------------------------------------------------------------X

The plaintiff, MARIA GARGANO (henceforth "Plaintiff"), through the undersigned attorney, brings this action against the defendants, MASSAPEQUA UNION FREE SCHOOL DISTRICT ("MUFSD"); and DR. RANDALL SOLOMON ("Solomon") and respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a civil action, seeking monetary and injunctive relief and punitive damages for the Plaintiff MARIA GARGANO, Plaintiff asserts federal and state law claims for tortious acts of fraud and deceit, both common and statutory, resulting in violations of her constitutional and civil rights under 42 U.S.C §1983, New York State Executive Law Sections 290 and 296, Education Law §§3020-a and 913.

2

## NATURE OF THE CLAIM AND THE PARTIES

2. **Plaintiff** seeks recovery for monetary damages for the harm caused to her reputation, livelihood, and career as a stellar elementary school teacher; additionally, for the defamation, discrimination, distress, suffering, mental, emotional, and physical anguish and humiliation, impairment of ability to secure future employment, impairment of earning power and embarrassment inflicted upon her due to the negligence, carelessness, recklessness, and, misfeasance, malfeasance, and negligent acts practices, and/or omissions of the Defendants, particularly in deviating from the acceptable standards of review and investigation in accordance with the State Education Department, the Commissioner of Education, and the Massapequa Federation of Teachers; and negligently, improperly, and unprofessionally failing to expeditiously investigate obviously false, frivolous, retaliatory, unsubstantiated, and delusive allegations erroneously made against the Plaintiff by the Superintendent of Schools; inappropriately placing her on administrative leave and inappropriately making her the subject of extensive, inappropriate, and unnecessary psychiatric examinations conducted by Dr. Randall Solomon where she was *inter alia,* erroneously deemed unfit to teach in a report submitted to Defendant MUFSD by Solomon under the color of law, namely Section 913, and subjected to a disciplinary proceeding in accordance with Education Law Section 3020-a; and further, in violating State and Federal Civil Rights, 42 U.S.C. § 1983 including but not limited to State and Federal Constitutional violations for a denial of due process and the Equal Protection of the Laws, and in causing her to be continuously denied employment as a result of having to disclose the fact that she was the subject of a disciplinary proceeding. In sum, even though

3

Plaintiff was found not guilty of all charges, the stain of the fraud and deceit of Defendants remained in her personnel file.

3. At all times relevant to the actions described herein, Plaintiff was a resident of West Islip, New York, located on Long Island in the County of Suffolk. Plaintiff began her employment with Massapequa Public Schools in 1987 as an Elementary Education Teacher, and from 1987 through 2010 she received satisfactory, if not exemplary, performance evaluations. In June 1990, she received her tenure and the Constitutional protections given under the Teacher Tenure Law Education Law 3020-a.

4. Defendant Massapequa Union Free School District is a public school district located on Long Island, in Nassau County and is a municipal corporation duly organized, authorized and existing under and by the virtue of the laws of the State of New York, with offices located at 4925 Merrick Road, Massapequa, New York 11758.

5. At all times relevant to the actions described herein, Defendant Dr. Randall Solomon was a psychiatrist and was an agent for the District at the time of the unlawful practices. Solomon was unlawfully given authority under color of law to control the terms, conditions and privileges of Plaintiff's employment and qualified as agent of the District pursuant to Education Law Section 913. He aided and abetted in the fraud, deceit and discrimination against Plaintiff created by the District and willingly participated in the decision-making process that forms the basis of the pattern and practice described herein to terminate Plaintiff and deny her the rights of her tenured position. He is sued in his individual and official capacity.

**JURISDICTION AND VENUE**

6. The jurisdiction of the Court over this controversy is based upon New York State Education Law §3020-a; New York State Education Executive Law Article 15 §290, §296; Education Law Section 913; and 42 U.S.C. § 1983.

7. The unlawful practices alleged below were committed within the County of Nassau, State of New York.

8. The causes of action arose in the State of New York while Plaintiff was employed by the District, which conducts substantial business in the County of Nassau, City of Massapequa, in the State of New York.

9. The Court has jurisdiction over the Plaintiff's claims because the amount in controversy exceeds the jurisdictional amount of $25,000.00.

10. As Nassau County is the county in which the events or omissions giving rise to the claim occurred, venue is proper in Nassau County, New York pursuant to CPLR 503(b).

11. A Notice of Claim was served on the District but has not, to date, been adjusted nor resolved.

## FACTUAL ALLEGATIONS

12. Plaintiff received a B.S. degree in 1983 from Pace University, then a M.S. degree from Dowling College in 1987. She has more than 60 credits beyond her degree.

13. Plaintiff started her teaching career at Brentwood Schools as a permanent sub, after this position was hired by Praise Christian School for two years, and then she got a job at the Massapequa School District (1987).

14. Plaintiff taught General Education to grades k-6 while a teacher there. She is not licensed to teach special education. During the charged year 2010-2011 she taught fourth grade.

5

15. Dr. Amanda Lowry was in her first year as Principal of McKenna Elementary School in Massapequa in the 2010-2011 school year. She was not familiar with the parents in her building, nor was she sufficiently in control of the parents at that time.

16. April 2010 Plaintiff sustained a concussion and other injuries from a car crash. She remained out of her classroom until January 2011. Plaintiff started seeing a Psychiatrist, Dr. John King.

17. While Plaintiff was recovering, her fourth-grade class had a series of teachers come and go, which angered the parents. Plaintiff was not aware that this class had a series of leave replacement teachers from Kindergarten through grade 3.

18. One student with an Individualized Education Plan (IEP), "GM", was placed in Plaintiff's class during the 2010-2011 school year. Plaintiff believed at the time of her return to her class in January 2011 that GM did not belong in her General Education classroom, as she is not certified as a Special Education teacher, and GM needed a paraprofessional, and an Integrated Co-Teaching classroom, and/or continuous monitoring, which Plaintiff could not give to him.

19. On April 2, 2011, GM's mother "DM" sent a letter to the school district complaining about Plaintiff, saying that she verbally abused GM, did not help him with his work in compliance with his IEP, and placed her son into a 'storage closet' to control his behavior. Other parents received this letter and spread the 'news' throughout the school.

20. On January 6, 2011- only a few days after Plaintiff returned to the classroom – and April 1, 2011, parent meetings were held, at which the discussion centered around how "afraid" students were of Plaintiff's yelling and placing them in the "storage closet". Another rumor was that Plaintiff would call on a student only if they were "crying, bleeding, or

6

dying". Parents were furious that Plaintiff was in the classroom and not the previous teacher, Ms. Primus, who was a leave replacement teacher who allowed the students to do whatever they wanted. The parents had no idea that the allegations against Plaintiff were false.

21. Dr. Lowry was unsure of any of the facts and did not perform an investigation. She decided to believe GM and his friends. No justification for this was known. She told Plaintiff not to speak to the parents, in order to stop the situation from getting worse. Then Plaintiff was told to sit at home until further notice.

22. During the years of 2011, 2012, 2013, at the unsubstantiated demand of the Defendants, Plaintiff was compelled to attend psychological examinations with Dr. Randall Solomon. Dr. Solomon is engaged by many, if not all, of the Nassau County and Suffolk County School Districts, wherein he allegedly engages in similar subversive tactics, such that identical diagnosis of incapability and mental incompetence are rendered against teachers without any corroboration or basis.

23. Dr. Solomon has been described by union presidents as a conduit utilized by the various Districts to purposefully remove teachers who could not otherwise be stripped of their tenure.

24. On April 2, 2011 Lucille Iconis, Superintendent of Schools met with Thomas Caramore, Interim Assistant to the Superintendent for Human Resources and General Administration, and they decided it was necessary to schedule Plaintiff for a mental examination pursuant to Section 913. In May 2011 they informed Plaintiff that she had to see Dr. Randall Solomon.

7

25. On May 4, 2011 Plaintiff went to the office of Dr. Randall with her Union Representative. Dr. Solomon told her that he needed his HIPAA form filled out, with unlimited requests for information Solomon wanted her to give him all information about her life dating back to 1964, when Plaintiff had last visited Good Samaritan Hospital.

26. Plaintiff told Solomon she had to check with her attorney. Solomon proceeded to "examine" Plaintiff by talking to her in a belligerent fashion for 1 ½ hours. Dr. Solomon found her unfit to teach and wrote, "In considering her mental health difficulties which are characterized by the aforementioned deficits in essential areas of judgment, insight, empathic understanding and ability to introspect, the risk that Mrs. Haber will continue to violate appropriate teacher-student boundaries is unacceptably high." He gave her a GAF score of 50 and gave her a diagnosis of Mood Disorder, Anxiety Disorder, Possible Malingering and Narcissistic Personality Features.

27. Dr. Solomon justified his finding of "unfit" by saying that he read documents, and then spoke with [Respondent] for 1 1/2 hours and saw that she had 'very apparent deficits in important areas of psychological processing and perspective' that raised concerns...judgment, insight, ability to engage in a process of introspection in a healthy way, inability to empathically understand the feelings and perspective of others. In addition to that, there was a great deal of inconsistent information that she provided."

28. Dr. Solomon kept repeating "inconsistent", but he never defined what he meant. In fact, and most alarming, Dr. Solomon testified that: "The diagnosis that I was able to make, anxiety disorder, not otherwise specified, and mood disorder, not otherwise specified...*the accuracy of this diagnosis was not necessary for me to render the opinion that I did.*"

8

29. Defendant Solomon obtained the information after he and Massapequa Superintendent Thomas Caramore ordered Plaintiff to fill out a HIPAA form that was not in compliance with the official government-issued form, and Solomon went outside of even those limitless requests written therein. Solomon has his own HIPAA form that is not valid as it does not have limits to the period put under scrutiny for the manipulation by Solomon in the 913 exams.

30. Nevertheless, Plaintiff felt pressured to give Dr. Solomon every document requested, from any doctor, so she sent him all the papers he requested on or before June 27, 2011.

31. In a letter to Superintendent Caramore on June 27, 2011 Plaintiff informed him of her compliance with the order of Dr. Solomon, but requested that she be given another psychiatrist other than Dr. Solomon, a doctor who could provide an "unprejudiced" evaluation. She received no response.

32. On or about September 26, 2011, Plaintiff was served with 23 charges of incompetency and misconduct pursuant to Education Law 3020-a.

33. After another visit with Dr. Solomon on July 25, 2012, Plaintiff was given the same diagnosis as previously, except for a lower score on the GAF. This time she was rated 45 (meaning she should be immediately transferred into an institution for the mentally insane).

34. In June of 2013, Plaintiff was interrogated again by Dr. Solomon, who diagnosed her as mentally ill in spite of all evidence to the contrary, and stated in his report that the Plaintiff remains "mentally unfit to continue working as a teacher in the Massapequa School District."

9

35. Plaintiff was forced to stay home because of these lies about her mental health, and six months later ordered to attend a second mental health exam ("Section 913 examination") with Dr. Randall Solomon, who was now time armed with reports about Plaintiff's automobile accident which were not relevant to her teaching competence or performance.

36. As a result of Dr. Solomon's erroneous recommendations created after deliberately and maliciously misinterpreting the information in the illegally obtained reports, Plaintiff was deemed unfit to teach and subjected to a disciplinary proceeding in accordance with Education Law Section 3020-a.

37. Education Law section 913 authorizes a board of education to have a medical examination of an employee conducted when questions arise as to the employee's physical or mental health. The statute states that the board of education of any school district "shall be empowered to require any person employed by the board of education … to submit to a medical examination in order to determine the physical or mental capacity of such person to perform his or her duties."

38. The law specifies that the exam must be performed either by the district's director of school health services or by another physician or healthcare provider of the employee's choice. The employee has the right to be accompanied to the exam by a physician or other qualified person of his or her choice.

39. Plaintiff was never told that she could be assessed by a doctor of her choice. In fact, she was forced to see Dr. Randall Solomon not once, but three times, only to be lied about and her character maligned.

40. Plaintiff was initially represented by NYSUT Attorney Steven Friedman, the Union's attorney, but fired him after he advised her to resign or she would be terminated. As Plaintiff knew that she was not guilty of the charges, she refused to admit guilt, consider a fine, suspension, or resignation.

41. Plaintiff hired a private legal team to represent her at the 3020-a arbitration. Thomas Germano, Esq. was appointed arbitrator. On April 3, 2013, a pre-hearing telephone conference was conducted. (There had been 2 previous conferences on Dec. 16, 2011 and Jan. 20, 2012, at which time the hearing was held in abeyance pending a possible resolution).

42. On February 27, 2014, Arbitrator Germano found Plaintiff not guilty of all charges in his Opinion and Award: "The Respondent, Maria Haber, is found not guilty as charged in all of the Specifications lodged against her in the Charges contained herein, with the exception of Specification 11, for which a non-disciplinary discussion is the appropriate remedy. Ms. Haber is to be restored to her teaching position within the District, made whole for any loss of pay or benefits she may have incurred, with all Charges and Specifications expunged from her record."

43. Plaintiff was sent to the Superintendent's office, now at Birch Lane Elementary School in Massapequa.

44. Throughout March -June 2014, upon Plaintiff was assigned exclusively to solitary training activities. When she sought to meet other teachers to discuss preparation or techniques while on independent study for training in common core Math, she was banned from meeting with other teachers and from entering Birch Lane Elementary School. However, she was later allowed when the teacher providing the training said it

11

would be difficult to bring all the math manipulatives to the room in the Superintendent's office where Plaintiff was assigned to self-study. **From April of 2014, until September 29, 2014, Plaintiff's I.D. badge stated that she was merely a monitor and not a certified teacher.**

45. In May 2018 Plaintiff became aware of the fraud and deceit of the Defendants as well as the disastrous effects this fraud and deceit had on her life. In February 2018 Plaintiff was asked by a paralegal from her 3020-a legal team to appear as a witness for a Nassau BOCES Speech Pathologist charged with 3020-a charges after being forced to see Dr. Randall Solomon who gave her a GAF score of 50, without justification. She also became aware that the District never gave Dr. Randall Solomon a contract for his work, thus never publicly citing the terms and scope of his work with her.

46. Another fact that shows fraud and deceit is the fact that Dr. Solomon never had to bid for any job with the District that involved a Section 913 assessment.

47. Without a contract, and no bidding on any job as well as being paid under the table by the school district, Dr. Solomon has the unlawful right to give any assessment as long as he finds the educator "unfit to work". In fact, Solomon wrote on the top of his notes, "THEY DON'T WANT HER BACK".

48. The Section 913 law has been weaponized with the "hired gun" being Dr. Randall Solomon, who is hired to recommend that the school districts fire tenured professionals as "unfit" when in fact they are anything but unfit. The Defendants know that they are deliberately denying tenured teachers their tenure rights under Education Law 3020-a, namely to have a fair and impartial assessment of their work at a due process hearing, and

12

to have their jobs protected from the whims and fancy of principals and/or superiors, including Superintendents and school boards..

49. The Arbitrator in the 2018 3020-a case of Debra Becker would not hear the testimony of the Plaintiff but did accept into evidence the Plaintiff's Opinion and Award written by Arbitrator Thomas Germano.

50. On May 3, 2018, Ms. Becker, the Speech Pathologist was found not guilty of all charges after the Arbitrator recognized the fraud and deceit of Dr. Solomon. Arbitrator James Brown wrote, "Dr. Solomon's June 3, 2016 written report of his February 2016 evaluation stated various diagnoses of Respondent including "malingering" which he defined as "either a fabrication and/or an exaggeration of symptom in order to consciously and willfully obtain a secondary gain." (Tr. 96). He found that Respondent was malingering because it "would be very unusual for a person to have these kinds of injuries repeatedly." (Tr. 62). In sum, Dr. Solomon's written report of his February 2016 evaluation concludes that Respondent is "not mentally fit" to perform her job duties and that returning her to the classroom constituted an "unacceptably high" risk. (Tr. 101; BOCES Exhibit 1).

Opinion and Award, pp. 6-7

"Respondent also argues that BOCES "improperly" retained the services of Dr. Solomon who never "bid for his work." (Respondent Brief at 13). Alleging a violation of a local ordinance, Respondent submits that "public money" was improperly "spent without any budgetary line, no bidding and no accountability" which resulted in two evaluations with "no oversight, guidance or accountability." (Respondent Brief at 15-17)

Opinion and Award pp. 13-14.

"Herein, BOCES relies on Dr. Solomon's opinion that Respondent poses a significant risk to her students because she is addicted to prescribed pain medication. Yet, there is no evidence that Respondent's job performance was impaired, and no such evidence

13

was presented to Dr. Solomon. Indeed, Dr. Solomon saw no documentation that Respondent's "work performance was less than acceptable," and he knew of no "instances of her work performance being subpar." (Tr. 177-178)...

... Dr. Solomon also confirmed that Respondent's classroom performance did not trigger her Education Law § 913 evaluation; rather, BOCES expressed concern that Respondent had filed an "excessive" number of workers' compensation claims (Tr. 54) which undoubtedly presented a real challenge for BOCES."

Opinion and Award pp. 15-16

Brown gave the following Award:

"Respondent, Debra Becker, is not guilty of the Charges and Specifications, and is thus acquitted of the Charges against her."

Opinion and Award, p. 17.

51. Plaintiff retired in May 2018, ready to work on new and different substitute assignments as a teacher. She started sending resumes to schools in New Jersey, and Florida, however the individual schools ask if she had ever been "charged", therefore she could not apply.

52. Despite being exonerated of all charges against her and restored of her teaching position with the District, Plaintiff's harm as a result of the Defendants' actions is continuing, as she has been currently refused employment positions as a result of having to disclose the fact that she was previously charged with disciplinary action and placed on administrative leave, all resulting from being subjected to the 913 psychological examinations by Dr. Randall Solomon wherein he made unsubstantiated findings concerning Plaintiff's capabilities and mental competence to teach which he knew were false.

53. Most recently, on February 21, 2019, and continuing, Plaintiff has applied and been denied employment positions as a teaching assistant and substitute teacher. This

inability to secure employment in her field of expertise and education subjects Plaintiff to continuing harm and emotional and physical distress.

## FIRST CAUSE OF ACTION
Violation/Interference with Constitutionally Protected Rights; Due Process and Equal Protection Rights.

54. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 52 as though fully set forth herein.

55. The conduct and actions of Defendants in creating a fraudulent scheme to falsely accuse her of misconduct were and continue to be unlawful, oppressive and a violation of Plaintiff's tenured protections under the New York State Constitution.

56. Plaintiff demands judgment against Defendants for all damages recoverable as a matter of law pursuant to 42 U.S.C. § 1983 for the Defendants' violations of Plaintiff's substantive due process rights, including but not limited to actual, compensatory, emotional and punitive damages to be determined by a Jury.

## SECOND CAUSE OF ACTION
Intentional and Negligent Infliction of Emotional Distress, Verbal Harassment, With Unjustified Threats of Future Harm

57. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 55 as though fully set forth herein.

58. Plaintiff was subjected emotional and psychological dangers and intimidation. Plaintiff has been subjected to extreme and outrageous conduct by Defendants, whose intent is to cause - or recklessly disregard the substantial probability of causing - severe emotional distress; severe emotional distress to the plaintiff is shown to be proximately caused by the

15

Defendants' conduct; Damages have been severe. These acts created an unreasonable risk of causing the Plaintiff emotional and physical distress; the Plaintiff's distress was foreseeable; the defendants' conduct was the cause of the Plaintiff's distress; and facts show there is a breach of direct duty of care to the Plaintiff.

59. As a result of this retaliation, intimidation, and abuse, Plaintiff has been irrevocably harmed and demands judgment against Defendants an amount to be determined by a jury of her peers.

### THIRD CAUSE OF ACTION
STATE AND MUNICIPAL VIOLATIONS
Education Law 913, NY State Executive Law Article 15 Sections 290, 296
Deprivation of Rights Under Color of Law.

60. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 59 inclusive, of this Complaint, with the same force and effect as though herein fully set forth.

61. Defendants, acting under color of law have engaged in a course of action and behavior rising to the level of a policy and condoned practice, and this has deprived Plaintiff of her rights secured by the Constitution and laws in violation of Education Law Section 913 and New York Executive Law Article 15 Sections 290, 296.

62. It can be said that to condone lies, false documentation, and other such acts is contrary to Municipal Law.

63. It can be said that to condone lies, false documentation, and other such acts is

contrary to Public Officers Law.

64. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and is entitled to damages sustained to date and continuing as well as punitive damages and costs to be determined at trial.

## FOURTH CAUSE OF ACTION
Abuse of Process

65. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 63 inclusive, of this Complaint, with the same force and effect as though herein fully set forth.

66. Defendants, and each of them conspired to deprive Plaintiff of her tenure rights, and jointly caused such deprivation of rights by acting in concert to unlawfully bring harm, distress, and economic ruin to Plaintiff as described above.

67. Such actions by Defendants denied Plaintiff equal protection under the law, and her rights are guaranteed under the laws of New York State under the Tenure Law, New York State Constitution and U.S. Constitution.

68. As a result of the Defendants' crusade to maliciously harm Plaintiff, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and is entitled to damages sustained to date and continuing in as well as punitive damages and costs to be determined at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court enter judgment:

17

For an Award representing compensatory/emotional damages for Defendants' deliberate and intentional misrepresentation of the Section 913 law and implementation, which was false and known by the Defendants to be false, made for the purpose of inducing the Plaintiff to rely upon it to her harm and injury;

For an award representing compensatory/emotional damages against Solomon for his false and deceitful assessments of Plaintiff under NYEL § 290 *et seq* to be determined by a jury;

For reasonable attorney's fees and costs;

For equitable relief; and

For such further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff herein demands a trial by jury of all issues in this action.

Dated: New York, New York
September 2, 2020

MASON LAW, PLLC

*/s/ D. Christopher Mason*
D. Christopher Mason
Attorneys for Plaintiff
MARIA GARGANO
11 Broadway, Suite 615
New York, NY 10004
T: (212) 498-9691
F: (212) 498-9692

18

## **VERIFICATION**

I, the undersigned, am an attorney duly admitted to practice law in the Courts of the State of New York, and mindful of the penalties of perjury, affirm the following:

I am a member of the firm of the attorneys of record for the Plaintiff MARIA GARGANO. I have read the annexed VERIFIED COMPLAINT, know the contents thereof, and know the same to be true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters therein not stated upon personal knowledge, are stated upon information and belief based upon documents and information in counsel's file.

The reason I make this Verification instead of the Plaintiff is that the individual Plaintiff does not reside in the county where this law firm maintains its office.

I affirm that the foregoing statements are true under the penalties of perjury.

Dated: New York, New York
       September 2, 2020

                          MASON LAW, PLLC.

                          /s/ D. Christopher Mason
                          D. Christopher Mason
                          **Attorney for Plaintiff**
                          **MARIA GARGANO**
                          11 Broadway – Suite 615
                          New York, NY 10004
                          T: 212.498.9691
                          F: 212.498.9692